UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 3:07-CR-00048-HLA-MCR

KASSIAN MARITIME NAVIGATION
AGENCY, LTD.,
-------------------------------------------------

# UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF PROBATION

The United States of America, by and through undersigned counsel, files this response in opposition to the defendant's Motion for Early Termination of Probation filed on October 5, 2009. As the defendant offers no evidence of exceptional circumstances such that the interests of justice require an early termination of probation, the United States moves this Court to deny the defendant's request. This is also the position of the U.S. Coast Guard as articulated in a letter submitted by Commander J.F. Williams, Chief of the U.S. Coast Guard's Foreign and Offshore Compliance Division, in which Commander Williams states that "(a) review of the environmental compliance plan (ECP) audits required under the plea agreement with Kassian does not demonstrate any extraordinary conduct that would in the opinion of the Coast Guard warrant early termination of probation." A copy of the letter is attached to this response.

1

I.  **Factual and Procedural Background**

On August 17, 2007, defendant Kassian Maritime Navigation Agency, Ltd., (Kassian) pleaded guilty to knowingly failing to maintain an accurate Oil Record Book for the *M/V North Princess*. Specifically, under the terms of the Joint Factual Statement signed by the defendant and submitted at the time of their guilty plea, the evidence showed that while the ship was in the internal waters of the Middle District of Florida employees and agents of Kassian maintained an Oil Record Book that: (1) failed to disclose exceptional discharges of oil-contaminated waste made through a bypass pipe and without the use of required pollution prevention equipment; and (2) contained false information about quantities of oil-contaminated waste on board the vessel.

As Kassian also admitted in the Joint Statement of Facts, its employees aboard the *M/V North Princess*, acting for the intended benefit of Kassian, installed and used a bypass pipe to pump oil sludge and other oily waste directly into the ocean using the bypass pipe on its voyage to Jacksonville.

In addition, senior engineers employed by Kassian on board the *M/V North Princess* knowingly failed to make required entries in the vessel's Oil Record Book, an official document required to be maintained aboard the ship and kept available for inspection by Port State authorities, including the fact that sludge and oily wastes had been discharged through the bypass pipe into the ocean, circumventing required pollution prevention equipment.

Further, on or about November 20, 2006, during a U.S. Coast Guard inspection of the *M/V North Princess* in Jacksonville, Florida, conducted in part to determine the vessel's compliance with international and United States' environmental laws and

regulations, Kassian employees on board the *M/V North Princess* knowingly caused the vessel's false Oil Record Book to be presented to the U.S. Coast Guard.

Kassian was sentenced by this Court on August 17, 2007, and ordered to pay a criminal fine in the amount of One Million Dollars ($1,000,000), an organizational community service payment of Three Hundred Thousand Dollars ($300,000), and a special assessment of Four Hundred Dollars ($400).

As part of the sentence, and pursuant to the terms of the Plea Agreement, Kassian was placed on supervised probation for a period of thirty (30) months. In addition to the standard conditions of probation, Kassian was ordered to develop and implement an Environmental Compliance Plan (ECP) designed to prevent and detect future misconduct by the organization and promote an organizational culture that encourages ethical conduct and a commitment to compliance with the law.

Paragraph 9 of the Plea Agreement, approved and signed by Kassian, states that "<u>The Defendant agrees that thirty (30) months is an appropriate term of probation</u> (emphasis added)."

The same paragraph also provides that the defendant could, after twenty-four (24) months, move for early termination of probation consistent with 18 U.S.C. § 3564. The government agreed that its consent to any such motion would not be unreasonably withheld. Contrary to the defendant's assertion on page 2 of its Motion, nothing in the agreement created ". . . the <u>express right</u> for early termination of probation after twenty-four (24) months . . . so long as , Kassian implemented an Environmental Compliance Program." All that was agreed to was that the defendant would have the right to <u>request</u> an early termination of probation.

On October 5, 2009, the defendant filed its Motion for Early Termination of Probation. The defendant's probation is currently due to expire in February 2010.

II. **Argument**

Under the terms of the Plea Agreement entered into by the parties in this case, the defendant may, after twenty-four (24) months, move for early termination of probation consistent with 18 U.S.C. § 3564. 18 U.S.C. §3564(c) provides that the Court may terminate a term of probation previously ordered if it is satisfied that such action is warranted by "the conduct of the defendant and the interest of justice."

    A.    The Environmental Compliance Plan (ECP)

In its Motion, the defendant pronounces that it has ". . . implemented compliance measures well beyond the minimum requirements of the plea agreement and has ensured that Kassian is on the 'cutting edge' of compliance." However, these statements are not supported by any evidence beyond the self-serving assertions of the defendant's own employees. See Liokouras Decl. (The defendant's Motion specifically cites paragraph 33 of the Liokouras Declaration as support for its claims. However, a close reading of paragraph 33 of the Declaration reveals that it merely refers to Exhibits "A" and "B", which in turn are comprised solely of letters written by the defendant's own counsel that only repeat the same unsupported claims made in the defendant's Motion.)

Indeed, at its meeting with the defendant on August 12, 2009, the Department of Justice and U.S. Coast Guard representatives repeatedly requested that the defendant provide specific evidence of any steps that the defendant had taken that might demonstrate that the defendant had gone "above and beyond" mere compliance with the terms of its sentence. The defendant's response was underwhelming.

For example, as part of its presentation, the defendant offered evidence concerning its elimination of cubicles at its central offices in favor of a more "open office space" concept. On a more substantive level, the defendant represented that it had taken steps requiring that its employees provide daily updates to the main office concerning waste generation levels aboard its ships. However, upon further questioning by the government, the defendant admitted that such polices had not actually been committed to writing as part of the EMS and was not able to explain the reasons for their failure to do so. The defendant also admitted that none of the audits it had conducted on board its ships had taken place while any of the vessels were underway and under actual operating conditions. Rather, all of the audits occurred while the vessels were in port. Underway audits are useful in evaluating whether crewmembers are actually complying with environmental requirements when at sea and whether the ships are experiencing any mechanical issues that could impact their ability to manage their waste. While such audits were not required under the terms of the ECP, the ECP clearly gives the defendant the option of conducting them and, in the government's opinion, would demonstrate evidence of a defendant trying go beyond the minimum requirements of its probation.

Specifically, the ECP called for two sets of audits to be completed, one during the Initial Environmental Review and one during the subsequent final compliance audit. Paragraph D(5) of the ECP provides that the Initial Environmental Review audits should, to the extent practicable, be conducted while the vessels are underway and operating although the audits were permitted to be conducted in port. Kassian elected to conduct all of the audits while the vessels were in port. The basis given for this decision was a financial one, namely it was cheaper to do the audits in port. Paragraph H(1) of the ECP,

5

in setting out the requirements for the final compliance audits, provides that all vessels not previously audited should be audited to verify compliance with environmental laws and regulations and the requirements of the ECP and EMS. The ECP goes on to provide that all such vessels must be examined while the vessels are underway and operating. Again, the defendant made the financial decision to conduct all of the follow up audits while the vessels were in port.

While the defendant was certainly operating within the letter of the ECP in making these choices, its decision to choose the cheaper path to compliance, rather than conduct a more thorough, albeit more costly, path is further evidence that the company was not going "above and beyond" the requirements of the ECP but rather doing merely what it was legally obligated to do under the Court's order.

The government requested that the defendant provide additional documents following the August 12 meeting in an attempt to give the defendant another opportunity to demonstrate its extraordinary efforts. However, the documents subsequently provided merely covered the same points made by the defendant at the August 12 meeting.

Based that the lack of specific evidence provided by the defendant to support its claims, the government's conclusion is that there are no special circumstances that would justify supporting the defendant's Motion.

    B.    <u>The Environmental Management System (EMS)</u>

On Page 8 of its Motion, the Defendant states that Kassian implemented the Environmental Management System (EMS) manual a full twelve (12) months before it was required under the ECP. In fact, a close reading of the Motion reveals that this is really the only specific example the defendant offers of anything the defendant might

6

have done that exceeded the minimum requirements of the Court's sentence. However, this claim does not survive closer scrutiny as it distorts the facts and ignores any reasonable definition of the word "implement.".

Paragraph G (1) of the ECP provides that the defendant shall prepare the EMS within six months of receiving the Initial Environmental Review Report of Findings from the IC (Independent ECP Consultant). Paragraph D (8) of the ECP provides that the IC shall prepare the Initial Environmental Review Report of Findings no later than one hundred twenty (120) days following the imposition of sentence (August 17, 2007.) Paragraph G (3) provides of the ECP that the EMS should be fully implemented no later than nine (9) months after the EMS is approved.

The ECP allows the defendant nine months to implement the EMS because implementing the ECP is an arduous process that cannot be completed in a single day as the defendant claims. The new policies and procedures in the EMS must be distributed, employees must be trained and educated, and follow up audits must be conducted to ensure that the new policies and procedures are being followed and are effective. Implementation involves much more than simply distributing the paper document and pronouncing the EMS implemented. However, that is precisely what the defendant is trying claim in its Motion when it tries to allege that they "implemented" the EMS on February 18, 2008, on the very same day that the EMS was finalized and submitted.

In this case, the IC prepared submitted the Report of Findings on December 14, 2007, approximately one hundred twenty (120) days after sentencing. This was precisely the maximum time allowed under the ECP. The EMS was then submitted on February

18, 2008, sixty (60) days later and one hundred twenty (120) days before the maximum time period allowed under the ECP.

The defendant's position is that by simply distributing the EMS manual on February 18, 2008, and pronouncing it implemented, it "implemented" the EMS on that date and therefore did so twelve (12) months before the maximum allowable time allowed under the ECP. Such a claim completely misconstrues the purpose of the EMS and what is meant by "implemented."

As a review of the ECP demonstrates, the Initial Environmental Review is supposed to be an exhaustive assessment of all of the defendant's vessel and shore side operations to ascertain and evaluate all aspects of the defendant's vessels: their systems, equipment and components; current practices whether documented or not; the knowledge, skills, and abilities of ship and shore side personnel as they relate to the requirements of the ECP, and other maritime environmental protection requirements. ECP at para. D(5).

The resulting EMS is suppose to be a comprehensive document that: (a) provides for compliance with environmental requirements; (b) establishes specific objectives and targets for achieving and maintaining compliance with all marine environmental compliance; and (c) establish time frames for meeting these objectives and targets. ECP at para E. The EMS is essentially a road map for ensuring that the defendant achieves full environmental compliance in all aspects of its operations, with specific monitoring provisions to ensure that the aspects of the EMS are complied with.

To argue that the EMS was fully "implemented" on February 18, 2007, simply by distributing copies of the EMS and declaring it implemented is disingenuous. Such an argument reduces the EMS to a mere paper tiger.

It is not possible to implement all of the recommendations and requirements contained in the EMS by fiat, let alone conduct all of the various audits and follow-up inspections necessary to ensure that the requirements are being adhered to in a single day. Such a process takes months, not days.

C. <u>Interests of Justice</u>

Reduced to its essence, the remainder of the defendant's Motion is based on three arguments: 1) the defendant has not been found to have committed any subsequent offenses while on probation, 2) the defendant has developed and implemented the ECP, which it was legally required to do as part of the sentence imposed by this Court, and 3) the defendant's "corporate history and positive corporate characteristics."

Neither of the first two arguments compels a finding that the interests of justice require the relief requested. Complying with the law and following the requirements of probation ordered by the Court and previously agreed to by the defendant should represent the minimum standards of behavior expected of a sentenced defendant. By arguing that such behavior should be rewarded by an early termination of probation, the defendant turns the purpose of probation on its head. Under such a theory, every defendant that did not immediately reoffend would be entitled to an early termination of probation.

As for the defendant's "corporate history and positive corporate characteristics", the government is unsure how to properly evaluate this claim. To be sure, the defendant

was convicted of falsifying its Oil Record Book in order to conceal unlawful discharges of oil sludge and other oily waste into the ocean by using a bypass pipe that circumvented required pollution prevention equipment. In addition, the defendant admitted using and presenting this false document to U.S. Coast Guard inspectors in Jacksonville, who were on board the vessel to determine the ship's compliance with international and United State's environmental laws and regulations. These facts can hardly be counted as evidence of the defendant's positive corporate characteristics. The argument that "Kassian had <u>never</u> before had any environmental compliance violations, and more to the point had never had any 'run-ins" with the law" is similarly unpersuasive as most similarly situated vessel operators have not had <u>any</u> environmental compliance violations.

The defendant's attempt to characterize its conduct as merely ". . . one of inaccurate record keeping in the maintenance of the Oil Record Book while the vessel was in United States waters" is further troubling as it attempts to minimize the underlying the criminal conduct in this case and suggests that the defendant still does not appreciate the gravity of its behavior.

The terms of probation imposed in this case are not particularly onerous. The thirty (30) month period of probation was the result of a prolonged negotiation process between the government and the defendant. It was agreed to by both parties and the defendant specifically affirmed that thirty months was appropriate in the Plea Agreement into which it entered.

The defendant offers no evidence that requiring the defendant to fulfill its obligations under the terms of the Plea Agreement by completing another four months of probation would impose any undue hardship upon Kassian. In fact, the defendant has

represented that it would not have to spend any additional monies to comply with the current terms of probation over the next four months. Indeed, in Paragraph 39 of his Declaration, Captain Liokouras' states that ". . . it would be much easier, cheaper, and convenient for our company to just sit on the 'sidelines' and let the remaining few months of probation tick off the clock."

Rather, the defendant bases its request on a desire to reward to its employees for their efforts in implementing the ECP. "It would be a fair and significant reward to my staff for the U.S. authorities to acknowledge their outstanding and unparalleled efforts and achievement." Liokouras Decl. at para. 40. While perhaps noble, such a motivation does not constitute proper grounds for prematurely terminating probation in the interests of justice. Nor does the defendant explain why it should be necessary for the United States to offer a significant reward to a defendant convicted of trying to deceive the U.S. Coast Guard by presenting false documents in order to conceal deliberate acts of pollution. Taking the defendant at its word, the only obligation that the defendant faces for the remaining five months of its probation is to merely avoid violating the law. This does not appear to be too much to ask of a convicted defendant.

On the other hand, the government has a legitimate interest in ensuring that the defendant has indeed learned its lesson and taken meaningful steps to ensure that such criminal conduct as occurred in this case does not occur again. The purpose of an ECP is not just to develop written policies and procedures that can be distributed to the various ships in the defendant's fleet. Experience has shown that such efforts to "paper" the problem are ineffective. Rather, ECPs represent an attempt to modify the culture of a corporation and establish meaningful procedures that ensure that both the letter and the

11

spirit of the ECP are implemented. Such attempts take time to take hold and become entrenched. Additional time is necessary to evaluate whether the developed policies are effective or require additional modification. That is why in most cases the government believes that it takes a minimum of three years to adequately implement and evaluate an ECP. While the government recognizes that it is bound by its agreement that there be only thirty (30) months of supervised probation in this case, it finds no extraordinary evidence offered justifying a further reduction.

### III. Conclusion

Because the defendant has not produced sufficient evidence that the interests of justice call for an early termination of its probation and because the term of probation imposed in this case under the terms of the Plea Agreement was appropriate, as acknowledged by the defendant at the time the plea was entered, the United States respectfully requests that the defendant's motion be denied.

Respectfully submitted,

A. BRIAN ALBRITTON
United States Attorney

By: *s/ John M. Guard*
JOHN M. GUARD
Assistant United States Attorney
Florida Bar Number 374600
300 North Hogan Street, Suite 700
Jacksonville, Florida 32202-4270
Telephone: (904) 301-6300
Facsimile: (904) 301-6310
E-mail: john.guard@usdoj.gov

By: *s/ Joseph A. Poux, Jr.*
JOSEPH A. POUX, JR
Environmental Crimes Section
U.S. Department of Justice
601 D. Street, NW, Suite 2124
Washington, D.C., 20004
Telephone: (202) 305-0357
Facsimile: (202) 305-0397
E-mail: joseph.poux@usdoj.gov

**U.S. v. KASSIAN MARITIME NAVIGATION AGENCY, LTD.**

**Case No. 3:07-cr-00048-HLA-MCR**

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

George M. Chalos, Esq.

I hereby certify that on October 16, 2009, a true and correct copy of the foregoing document and the notice of electronic filing was sent by United States Mail to the following non-CM/ECF participant(s):

None

                                                  A. BRIAN ALBRITTON
                                                  United States Attorney

By:    *s/ John M. Guard*
        JOHN M. GUARD
        Assistant United States Attorney
        Florida Bar Number 374600
        300 North Hogan Street, Suite 700
        Jacksonville, Florida 32202-4270
        Telephone:   (904) 301-6300
        Facsimile:    (904) 301-6310
        E-mail:john.guard@usdoj.gov